# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRAIHAT FAOUR ABDALLAH,<br><br>                Petitioner,<br>vs.<br>MICHAEL CHERTOFF, et al.,<br><br>                Respondents. | CASE NO. 06cv1541 DMS (NLS)<br><br>**ORDER DENYING PETITION<br>FOR HABEAS RELIEF** |

      This matter comes before the Court on Fraihat Faour Abdallah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter has been fully briefed. Having carefully reviewed the papers,[1] the Court DENIES Petitioner's petition.

## I.
## FACTUAL BACKGROUND

      Petitioner is a forty-four year old citizen of Jordan who was born into a Muslim family. Petition at 3-4. On July 15, 1991, he was admitted to the United States as a B1/B2 non-immigrant visitor. *Id.* According to Petitioner, in 1994 he met a Christian woman and became a Christian. *Id.* That same year, Petitioner was sentenced to 270 days in county jail for forgery and car theft. *Id.* Although he was released on probation after 180 days, he violated his probation and was sentenced to three years and eight months in State prison. The INS, now Department of Homeland Security ("DHS"), began removal proceedings upon his release on December 31, 1998. *Id.* Petitioner applied

---

[1] Petitioner's motion to file under seal is denied.

for asylum, claiming he would be persecuted because of his new faith if deported to Jordan. Although his application was initially denied, on remand from the BIA, the Immigration Judge ("IJ") found Petitioner's testimony that he had converted to Christianity credible and concluded he would suffer persecution if deported. The IJ, therefore, granted Petitioner a withholding of removal.

On July 6, 2001, Petitioner was convicted of manufacturing methamphetamine and was sentenced to six years and eight months in prison. Return, Ex. 4. Upon his release on October 8, 2004, Petitioner was taken into custody and charged in a Notice to Appear with removability under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(I) as having committed an aggravated felony and having violated a law relating to a controlled substance. *Id.* On March 22, 2005, an IJ ordered that Petitioner be removed to Jordan. Petitioner waived his right to appeal the decision. *Id.* at Ex. 5.

On April 7, 2005, Petitioner filed a petition for a writ of habeas corpus in this district (case No. 05cv0718 WQH). *Id.* at Ex. 1. The court subsequently transferred the petition to the Ninth Circuit pursuant to the REAL ID Act of 2005, which strips district courts of jurisdiction to review final removal orders. *Id.* at Ex. 2. The Ninth Circuit dismissed Petitioner's case on December 14, 2005 for lack of jurisdiction. *Id.* at Ex. 3. Meanwhile, Petitioner filed an appeal of the March 22, 2005 order with the BIA. *Id.* at Ex. 9. On July 11, 2005, the BIA denied the appeal for lack of jurisdiction as Petitioner made no argument that he did not knowingly and intelligently waive appeal. *Id.* at Ex. 10. Petitioner appealed the BIA's denial to the Ninth Circuit. On December 14, 2005, the court stayed removal pending the appeal, which is still pending. *Id.* at Ex. 11.

Subsequently, Petitioner initiated several cases all relating to the March 22, 2005 removal order. On August 25, 2005, Petitioner asked the BIA to reconsider its July 11, 2005 dismissal. *Id.* at Ex. 10. The motion was denied as untimely. *Id.* at Ex. 14. Petitioner then appealed this decision to the Ninth Circuit, which consolidated it with his previous appeal (case no. 05-74538). *Id.* at Ex. 15. The Ninth Circuit also stayed removal pending this appeal. *Id.*, Ex. 15 at 3. On January 25, 2006, Petitioner filed a motion to reopen his case with the Immigration Court, arguing he did not knowingly waive appeal. The IJ denied this motion, and the BIA also denied his appeal and request for reconsideration. *Id.* at Exs. 12, 13, 17. Petitioner appealed the denial to the Ninth Circuit (case no. 06-73678), which again issued a stay of removal. *Id.*, Ex. 16 at 2.

## II.

## LEGAL STANDARDS

The Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). That said, a detention of an alien does not necessarily violate that alien's constitutional rights. The authority of DHS to detain an alien subject to removal charges is found in 8 U.S.C. § 1226 and 8 U.S.C. §1231 of the Immigration and Nationality Act. Section 1226 provides the framework for the arrest, detention, and release of aliens in removal proceedings. Once removal proceedings have been completed, detention and release of the alien is governed by § 1231.

The determination of when an alien becomes subject to detention under § 1231 rather than § 1226 is governed by § 1231(a)(1)(B), which provides:

> The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Under § 1231(a)(1)(B)(ii), where a court issues a stay of removal pending its review of an administrative removal order, the alien continues to be detained under § 1226 until the court renders its decision. *See Ma v. Ashcroft*, 257 F.3d 1095, 1104 n. 12 (9th Cir. 2001) (stating, "[i]f the removal order is stayed pending judicial review, the ninety day period begins running after the reviewing court's final order"); *see also Martinez-Jaramillo v. Thompson*, 120 Fed. App'x 714, 717 (9th Cir. 2005) (holding that where a stay of removal is granted pending judicial review, § 1226 provides the statutory basis for detention). Here, the Ninth Circuit has issued several stays of removal pending its review of the BIA and IJ decisions. Petitioner is therefore detained under § 1226.

Under § 1226, an alien charged with removability may, upon a warrant, be arrested and detained pending removal proceedings. The Secretary of Homeland Security may release such an alien on bond or conditional parole pending the completion of the removal proceedings. Section 1226(c), however, mandates detention during removal proceedings for a limited class of deportable aliens, including those convicted of an aggravated felony. *Demore,* 538 U.S. at 517-18. Plaintiff falls under

this limited category of deportable aliens, having been convicted of an aggravated felony as set forth in 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1226(c)(1)(B).

### III.
### DISCUSSION

Petitioner, proceeding *pro se*, asks the Court to release him from detention under appropriate conditions of supervision. He argues the length of his detention is unreasonable, and his removal is unforeseeable. Reply at 28. The Government, on the other hand, argues Petitioner cannot demonstrate "good reason to conclude there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Government indicates that Jordan has evinced a willingness to repatriate Petitioner.

As an initial matter, the Court notes it has jurisdiction to consider Petitioner's petition because he does not challenge the merits of the removal order. Rather, he challenges only his detention. *Nadarajah*, 443 F.3d at 1075 (the REAL ID Act of 2005 strips district courts of jurisdiction over challenges to final orders of removal); *See generally Nnadika v. Attorney General of U.S.,* 484 F.3d 626, 632 (3d Cir. 2007) (holding Congressional Report indicates the provisions directing transfer to the Courts of Appeals of habeas cases were not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders"); *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (observing that "Act did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention.")

To determine whether Petitioner's detention is consistent with due process, the Court will briefly review the relevant case law.

**A.**     ***Zadvydas v. Davis* and *Nadarajah v. Gonzales***

In *Zadvydas*, 533 U.S. 678 (2001), the Court held that § 1231(a)(6) did not authorize the indefinite detention of removable aliens. The Government had argued that "'whether to continue to detain such an alien and, if so, in what circumstances and for how long' is up to the Attorney General, not up to the courts." 533 U.S. at 689. The Court held that interpreting the statute as such "would raise a serious constitutional problem." *Id.* at 689. Rather, the statute limits "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United

1 States." *Id.* According to the Court, reasonableness should be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 700. Thus, if removal is not reasonably foreseeable, continued detention under the statute is not authorized. *Id.* If, however, removal is foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* To guide lower courts, the Court held that a six-month detention is presumed reasonable. 533 U.S. at 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court cautioned, however, that the 6-month presumption "does not mean that every alien not removed must be released after six months." *Id.* "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

*Nadarajah*, 443 F.3d 1068 (9th Cir. 2006), a case relied on by the Government, addresses the legality of indefinite detention under 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A). *Id.* at 1076. These statutes permit the Government to detain an alien for further consideration of (1) the asylum application if it determines that the alien has a credible fear of persecution; and (2) the application for admission if the examining officer determines that an alien is not clearly entitled to be admitted. Nadarajah argued that his continued detention under these statutes was illegal. The Ninth Circuit agreed, holding the statutes did not authorize indefinite detention. *Id.* at 1076. In ruling in favor of Nadarajah, the court applied the reasoning in *Zadvydas*, although acknowledging that case "dealt with the detention of aliens who had been admitted to the United States, and construed a different statute." 443 F.3d at 1077. Similar to *Zadvydas*, the court held the statutes at issue permit detention "only while removal remains reasonably foreseeable." *Id.* at 1078. The court also adopted *Zadvydas'* 6-month presumption of reasonableness.

**B.**   ***Demore v. Kim* and *Tijani v. Willis***

In *Demore v. Kim,* 538 U.S. 510 (2003), the Supreme Court addressed the legality of an alien's detention under 8 U.S.C. § 1226(c). Kim, a lawful permanent resident alien, argued that the Government may not detain him even for the brief period necessary for his removal proceedings. *Id.*

at 522. Relying on *Zadvydas*, Kim argued that § 1226(c) is unconstitutional on its face. *Id.* at 526. A bare majority of the Court held Zadvydas was not controlling and that a brief detention under § 1226(c) does not violate due process. The Court distinguished *Zadvydas* in two respects. 538 U.S. at 527-29. First, *Zadvydas* involved detention following a final order of removal, not "detention of deportable criminal aliens pending their removal proceedings." *Id.* at 527-8. Second, the detention period in *Zadvydas* was "indefinite" and "potentially permanent" whereas detention under § 1226(c) "is of a much shorter duration." *Id.*

*Demore* relies on a crucial fact: that detention under § 1226(c) is often brief and finite. The Court's emphasis on the anticipated limited duration of the detention period under § 1226(c) is unmistakable. The Court explained: "Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." 538 U.S. at 529. Further, detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the...cases in which the alien chooses to appeal." *Id.* at 530. Contemplating these statistics, the Court held that, consistent with due process, criminal aliens may be "detained for the brief period necessary for their removal proceedings," without answering the question of "how brief" such a detention must be. *Id.* at 513.

*Tijani v. Willis,* 430 F.3d 1241 (9th Cir. 2005), also addresses the constitutionality of an alien's detention under § 1226(c). As acknowledged by the Government, the full import of this decision is not "readily discerned" because the opinion is brief (only three paragraphs in length) and "grants habeas relief, [] without deciding the issues raised on the merits." 430 F.3d at 1243 (Tashima, J., concurring). Tijani, who had been detained under § 1226(c) for two years and eight months, contended that the length of his detention was unconstitutional. Thus, unlike Kim who challenged the statute on its face, Tijani mounted an as-applied challenge.

In granting Tijani habeas relief, the Ninth Circuit held the case "is distinct from *Demore v. Kim* where the alien conceded deportability." *Id.* at 1242 (internal citation omitted). Tijani disputed that he was removable, and was still awaiting such an initial determination. Thus, he was imprisoned "not as the result of any adjudication of crime," but because "the government *may* be able to prove he is

subject to removal." *Id.* at 1242-43 (emphasis in original). The court held: "[t]o avoid deciding the constitutional issue, we interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens...[t]wo years and eight months of process is not expeditious." *Id.*

### C. This Case

The Government urges the Court to apply *Zadvydas* without deciding whether Petitioner is detained under § 1331 or § 1226(c). According to the Government, under *Nadarajah*, the Ninth Circuit "appears to have applied" *Zadvydas* "to all immigration detention circumstances." Return at 10. In support, the Government relies on the following language from *Nadarajah*: "we conclude that the *general immigration detention statutes* do not authorize the Attorney General to incarcerate detainees for an indefinite period. Rather, consistent with the Supreme Court's approach in *Zadvydas*, we conclude the statutes at issue permit detention only while removal remains reasonably foreseeable." *Id.* (emphasis in original). Applying *Zadvydas*, the Government argues Petitioner has not demonstrated there is no significant likelihood of removal in the reasonably foreseeable future. The Government contends *Tijani* should not apply because that decision "predates *Nadarajah*." *Id.* at 14.

Contrary to the Government's contention, *Zadvydas* does not apply here. As *Demore* pointed out, *Zadvydas* construed a statute permitting detention following final removal orders (§ 1331), not detention during determination of removability (§ 1226). The Ninth Circuit's application of *Zadvydas* to detention pursuant to "general immigration detention statutes" in *Nadarajah* does not support the Government's position. Rather, the Court's reference to "general immigration detention statutes" refers to two specific statutes: 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A), not detention under any immigration statute as the Government suggests. Because neither *Demore* nor *Tijani* applied *Zadvydas*, and both addressed detention under § 1226(c), the Court declines to apply *Zadvydas* here.

*Demore* and *Tijani*, however, provide this Court with little guidance. As already discussed, *Demore*'s holding is rather limited: it held merely that a brief detention under § 1226(c) does not violate the constitution. Contemplating a five month appeals process, the Court did not answer the question of how brief the detention had to be to satisfy due process. Unlike Kim, who was detained for only six months, Petitioner has been detained since October, 2004. As Judge Callahan observed in her dissent in *Tijani*, the *Demore* decision "may be read as implying a limit to the duration of

detention pending a determination of removability, or as holding that because the removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under 1226(c)." *Tijani*, 430 F.3d at 1241 (Callahan, J., dissenting).

Justice Kennedy, in his concurrence in *Demore*, pointed out that there exists a point at which the length of detention becomes so egregious that it can no longer be said to be "reasonably related" to an alien's removal. *Demore*, 538 U.S. at 523. (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.") The *Demore* majority's repeated references to the brevity and limited nature of confinement under § 1226(c) counsel that detention under that section must be "temporary" and brief. The brevity of such detention is emphasized in *Tijani*, in which the court held the petitioner's two years and eight months' proceeding was not "expeditious."

Citing numerous authorities, Petitioner argues that courts have previously allowed for discretion in releasing deportees from detention while they challenge removal. Petition at 8. However, the crucial distinction in this case is that removal of Petitioner has already once been ordered, and his detention was initially based on an offense that unquestionably fell under § 1226(c). In *Demore*, Kim was still awaiting an initial removal hearing. Tijani's detention was also pending an initial removal hearing; in fact, no determination had been made as to whether his "offenses actually f[e]ll within the reach of [§ 1226(c)]." 430 F.3d at 1244 (Tashima, J., concurring). Thus, as neither had yet to be officially ordered removed, Kim and Tijani retained a far different legal status than Petitioner.

Here, the sole concern of this Court is Petitioner's actual detention during his appeal to the Ninth Circuit. Of fundamental importance to this case is that as an individual previously ordered removed by the IJ and BIA, Petitioner has undergone a change in status. Unlike Kim and Tijani, he has already been deemed "removable," which must alter the manner in which this Court addresses his detention. Since a court has already found him removable, setting bail and releasing him is a riskier proposition than the *Tijani* court contemplated. *See Tijani*, 430 F.3d at 1242. Furthermore, because the delay has not been caused by the initial removal hearing, Petitioner's "continued detention here

[has] occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order." *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006). *See also Guang v. I.N.S.*, No. Civ.A. CV025916DGT, 2005 WL 465436, at *2 (E.D.N.Y. Feb. 28, 2005).

The issue of how much time a removable alien can be detained under § 1226(c) pending appeal has not been addressed by federal statute, the Supreme Court, or the Ninth Circuit. Today, this Court adopts the position that Petitioner's status is analogous to either: (i) a convicted criminal seeking bail pending appeal, or (ii) a defendant certified as extraditable.

### i. Comparison to convicted criminal seeking bail pending appeal

Already found removable, Petitioner is reasonably similar to a federal criminal defendant who has been found guilty at trial and sentenced to imprisonment, then challenges his custody while an appeal is outstanding. 18 U.S.C. § 1343(b)(1) addresses the issue of a defendant's release pending appeal:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released...and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

While the Constitutionality of this statute has not been challenged in the Ninth Circuit, courts in the Sixth, Seventh, and Eighth Circuits have emphatically and explicitly upheld it. *See*, *e.g.*, *United States v. Chilingirian*, 280 F.3d 704, 709-10 (6th Cir. 2002); *United States v. Portes*, 786 F.2d 758, 766 (7th Cir. 1985); *United States v. Powell*, 761 F.2d. 1227, 1235 (8th Cir. 1985). There is no published case in this country holding that § 1343(b) violates due process. Thus, the Court finds no Constitutional concerns in applying § 1343(b)(1) to Petitioner in this case.

Turning to § 1343(b)(1)(A), the Court has strong doubts that Petitioner would not pose a danger to the community if released. After living in the United States for fewer than ten years, Petitioner had already been convicted of forgery, car theft, and manufacturing methamphetamine.

(Petition at 3-4; Return at Ex. 4.) Alone, each of these crimes is quite serious, and this is certainly so with respect to manufacturing methamphetamine. As a group, they demonstrate a pattern of behavior that suggests a dangerous disregard for the laws of the United States. For this reason, the Court declines to find by clear and convincing evidence that Petitioner is not likely to pose a danger to the safety of the community if released. Petitioner's continued detention pending his appeal is thus appropriate and constitutional, because he has failed to satisfy the requirements of §1343(b)(1)(A).

### ii. Comparison to defendant certified as extraditable

As an alternative, Petitioner is also reasonably comparable to a defendant who has been found subject to extradition and then seeks bail while appealing the extradition order. The Ninth Circuit addressed precisely this issue in *Salerno v. United States*, holding that

> [t]here is a presumption against bail in an extradition case and only 'special circumstances' will justify bail. Examples of such circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process.

878 F.2d. 317, 317 (9th Cir. 1989) (internal citation omitted); *see also United States v. Bell*, 820 F.2d 980, 981 (9th Cir. 1987).

Here, Petitioner does not challenge the merits of the removal order, thus rendering the Court unable to evaluate any claims that may have a high probability of success on appeal. Further, the record gives no indication that Petitioner has any serious health problems. The lone remaining issue concerns the Ninth Circuit's delay in hearing Petitioner's appeal. Since the Ninth Circuit granted him a stay of removal, Petitioner has been detained for approximately twenty-one months. While this may seem a lengthy period of time, such is the reality of the appeals process. In examining the record, the Court finds no indication that any delays in Petitioner's ongoing appeal to the Ninth Circuit are unusual. The Court also stresses that Petitioner could avoid detention while waiting out this delay by accepting removal to Jordan and pursuing the appeal from his native country.

## IV.
## CONCLUSION

Under the laws pertaining to both convicted federal criminals and extraditable defendants, Petitioner's detention is lawful. The Court finds the analysis underlying these doctrines persuasive in

1 | the case at bar. Accordingly, the Court DENIES Petitioner's petition for writ of habeas corpus.

2 | **IT IS SO ORDERED.**

4 | DATED: September 28, 2007

```
                                    _____
                                    HON. DANA M. SABRAW
                                    United States District Judge
```